UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

GREGORY ALLEN PEET, SR.,     )
      )
      Plaintiff,     )
      )
     v.     )    Case No. 1:25-cv-00055-SNLJ
      )
CITY OF SIKESTON, et al.,     )
      )
      Defendants.     )

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's motion to dismiss plaintiff's complaint.  [Doc. 37].  Plaintiff opposes the motion.  For the reasons set forth below, the motion to dismiss plaintiff's complaint is **GRANTED**.

## I.    PROCEDURAL BACKGROUND

Prior to filing the instant complaint, plaintiff Gregory Peet, Sr., filed similar actions against similar defendants involving the same facts.  *See Peet v. City of Sikeston, Missouri*, Case No. 1:24-CV-94-SNLJ (E.D. Mo. May 15, 2024) (hereinafter "*Peet I*") *and Peet v. City of Sikeston*, Case No. 1:24-CV-214-SNLJ (E.D. Mo. November 18, 2024) (hereinafter "*Peet II*").  *Peet I* was dismissed and closed after initial review on October 10, 2024, for failure to state a claim.  *Id.*  Plaintiff Gregory Peet, Sr. filed a notice of appeal; but he subsequently submitted a motion to dismiss his appeal.  *Id.  Peet II* was voluntarily dismissed pursuant to Federal Rule of Civil Procedure 41(a)(1) on April 1, 2025.  *Id.*

## II.     FACTUAL BACKGROUND

On March 26, 2025, plaintiff Gregory Peet, Sr. filed this *pro se* civil action.  [Doc.

1].  His original complaint was forty-eight (48) pages in length and contained sixteen (16)

claims for relief against five (5) defendants:  the City of Sikeston, Missouri; Officer

Michael Minner; Sergeant Tyler Rowe; Chief James McMillen; and Captain John Broom.

[*Id.*].  On May 13, 2025, plaintiff filed an amended complaint that is forty-one (41) pages

in length and contains six (6) claims for relief against the same five (5) defendants.  [Doc.

34].  The individual defendants are being sued only in their individual capacities.  [*Id.*].

The following is a summary of plaintiff's account of the events.  The matters at

issue in the complaint appear to have arisen in February of 2022 between plaintiff and

Roger Stewart (hereinafter referred to as "Stewart"), the alleged owner of Stewart Auto

Sales in Sikeston, Missouri.[1]  According to plaintiff, he owned a 2001 Ford F350 truck

and a 28-foot trailer.  Stewart allegedly owned property located in Vanduser, Missouri.

Plaintiff Gregory Peet, Sr. and Stewart discussed trading the truck and trailer (plus some

cash) in exchange for the property located in Vanduser, Missouri.

On February 25, 2022, plaintiff took the truck and trailer to Stewart, along with

$2,000.00 in cash, and agreed to leave the vehicle and trailer in Stewart's custody for an

inspection to be done.  On February 26, 2022, plaintiff went to the Vanduser property for

inspection.  Plaintiff alleges that the property was not as Stewart had described.  Plaintiff

---

[1] Plaintiff Gregory Peet, Sr. has a pending case against Roger Stewart, Tiffany Stewart, Stewart's Auto Sales, Inc., Todd Worley, Haulers Insurance Company, Inc., Spain, Miller, Galloway & Lee, LLC, and Samuel P. Spain alleging eighteen (18) counts.  *See Peet v. Stewart, et al.*, 1:25-CV-00053-SNLJ (E.D. Mo. Mar. 24, 2025).

called Stewart to confront him about the discrepancies. Stewart told plaintiff to come and discuss the issues in person on February 28, 2022.

On February 28, 2022, plaintiff went to Stewart Auto Sales and allegedly told Stewart that he no longer wanted to fulfill the agreement to trade his truck and trailer for the Vanduser property. When plaintiff requested the return of his truck and trailer, Stewart told plaintiff that he had already sold them. When plaintiff threatened to call the police, Stewart made the call from his office.

Plaintiff alleges that after the phone call to the Sikeston Police Department that he walked to the station to make his own complaint against Stewart. Officer Michael Minner answered plaintiff's complaint and drove plaintiff back to Stewart Auto Sales. When they arrived at Stewart Auto Sales, plaintiff alleges that Officer Minner turned on his bodycam before entering Stewart's office. Once in Stewart's office, Officer Minner looked through the paperwork. Officer Minner ultimately told the parties that he deemed the matter a civil issue.

Plaintiff requested Officer Minner contact a supervisor to come and address Officer Minner's misconduct. Sergeant Tyler Rowe arrived at Stewart Auto Sales and after talking to the parties, he allegedly told plaintiff that he looked at the signed receipt that was arguably the agreement or contract between the parties. Plaintiff informed Sergeant Rowe that if the police were not going to pursue criminal charges, then he should be able to retrieve his truck and trailer.

When Sergeant Rowe went back inside Stewart Auto Sales, plaintiff allegedly entered his truck and attempted to break into the ignition. Officer Minner, Sergeant

3

Rowe, and Stewart came outside.  Officer Minner also allegedly told plaintiff that if he moved his truck, he would be arrested for stealing or attempted stealing of a motor vehicle.  Plaintiff complied and got out of the truck while still arguing that he should be able to leave with his truck and trailer.

Plaintiff then called Rhoden Towing to have his truck and trailer towed off the Stewart Auto Sales lot.  Once the towing truck arrived, plaintiff alleges that Officer Minner stood so that the tow truck could not get hooked up to the truck and trailer. Officer Minner told the tow truck company not to move or hook up to plaintiff's truck and trailer.

Officer Minner then allegedly told plaintiff that he needed to leave the Stewart Auto Sales property.  Sergeant Rowe told plaintiff that he needed to comply with Officer Minner's orders.  Plaintiff left Stewart Auto Sales and went to the Sikeston Police Department where he filed a complaint with Captain John Broom.  While he was at the police department, plaintiff alleges that he saw Stewart drive by in his truck with trailer.

Plaintiff alleges that he eventually filed a claim with his insurance company, but Chief James McMillen provided a report that indicated the City of Sikeston Police Department found that plaintiff and Stewart had a legally binding contract, plaintiff changed his mind and wanted to get out of the contract, and that they were also investigating plaintiff for possible insurance fraud.

Plaintiff's amended complaint asserts individual capacity claims against Officer Minner and Sergeant Rowe for Fourteenth Amendment due process violations and Fourth Amendment unreasonable seizure of property pursuant to 42 U.S.C. § 1983.  [Doc. 34].

4

Plaintiff also asserts individual capacity claims against Chief McMillen and Captain Broom for class-of-one equal protection violations and civil conspiracy to violate constitutional rights pursuant to 42 U.S.C. § 1983. [*Id*.]. Chief McMillen is also named in his individual capacity in a First Amendment retaliation claim pursuant to 42 U.S.C. § 1983. [*Id*.]. The City of Sikeston is alleged to be liable under a *Monell* theory of liability for the alleged unlawful actions of Officer Minner, Sergeant Rowe and Chief McMillen. [*Id*.]. Plaintiff seeks compensatory damages, punitive damages, and certain policy reforms. [*Id*.].

Defendants have filed a motion to dismiss plaintiff's amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). [Docs. 37, 39, 44]. Specifically, defendants assert that all counts should be dismissed for failure to state a claim upon which relief may be granted and on qualified immunity; Count I should be dismissed for lack of standing; and Count VI should be dismissed based on the intracorporate conspiracy doctrine. [*Id*.]. Alternatively, defendants assert that plaintiff's claims for declaratory relief, punitive damages against the city, and equitable relief should be dismissed. [*Id*.]. Plaintiff opposes the motion to dismiss. [Doc. 43].

### III.    LEGAL STANDARD

The purpose of a Federal Rule of Civil Procedure Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 527 (8th Cir. 2001) *quoting Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). In addressing

a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the plaintiff. *United States ex rel. Ambrosecchia v. Paddock Laboratories, LLC*, 855 F.3d 949, 954 (8th Cir. 2017). A complaint must be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating the prior "no set of facts" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). A complaint must set forth factual allegations which are enough to "raise a right to relief above the speculative level." *Id.* However, where a court can infer from the factual allegations no more than a "mere possibility of misconduct," the complaint must be dismissed. *Cole v. Homier Distributing Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) *citing Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

As for a Federal Rule of Civil Procedure 12(b)(1), to establish Article III standing, a plaintiff must have suffered an injury in fact that is fairly traceable to the defendant's challenged action, and it must be likely that the injury will be redressed by a favorable judicial decision. *Hawse v. Page*, 7 F.4th 685, 688 (8th Cir. 2021) *citing Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992). To survive a motion to dismiss for lack of jurisdiction, a plaintiff must allege sufficient factual matter, accepted as true, to support a reasonable and plausible inference that the elements of Article III standing are satisfied. *Auer v. Trans Union, LLC*, 902 F.3d 873, 878 (8th Cir. 2018).

# IV.    DISCUSSION

## A.  42 U.S.C. § 1983 Generally

Plaintiff filed this action pursuant to 42 U.S.C. § 1983, which was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Department of Social Services*, 436 U.S. 658, 685 (1978). To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation of that right was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

## B.  Count I:  *Monell* Claim against the City of Sikeston

In Count I, plaintiff asserts a municipal liability claim against the City of Sikeston. A city cannot be held liable under 42. U.S.C. § 1983 simply because it employs someone who allegedly violated plaintiff's rights. *Hamilton v. City of Hayti*, 948 F.3d 921, 929 (8th Cir. 2020). However, liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). Here, plaintiff appears to argue against the City of Sikeston under all theories of liability under *Monell* for alleged violations of his Fourth Amendment right to be free from unreasonable seizure of his alleged property and his Fourteenth Amendment right to be free from unlawful detention.

### 1.  *Constitutional Violation*

As discussed *infra*, plaintiff has not sufficiently pled a deprivation of constitutional rights in Counts II, III, IV, and V and, therefore, his municipal liability claim fails on this ground alone.  *Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016) ("In order for municipal liability to attach, individual liability first must be found on an underlying substantive claim.").  Even if the plaintiff had sufficiently pled a deprivation of a constitutional right, he fails to allege the facts necessary to support a municipal liability claim.

### 2.  *Official Municipal Policy*

Official municipal policy is "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."  *Barnett v. Short*, 129 F.4th 534, 545 (8th Cir. 2025) *citing Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016).  Thus, liability only attaches "where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered."  *Id. citing Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 946 (8th Cir. 2017).

Here, plaintiff's amended complaint contains no allegations of any policy of the City of Sikeston that he claims led to a violation of his constitutional rights.  Therefore, his *Monell* official policy claim fails.

### 3.  *Unofficial Custom*

To state a claim for custom liability, a plaintiff must allege facts that demonstrate:

8

   a) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by a governmental entity's employees;

   b) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

   c) That [he] was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

   *Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Liability for a constitutional custom cannot arise from a single act. *Id.* "The pattern of unconstitutional conduct must be so pervasive and widespread so as to have the effect and force of law." *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018).

The City of Sikeston argues that the claim against it must be dismissed because the allegations are insufficient to establish a pattern. The Eighth Circuit has not directly addressed the quantum of continuing, widespread, persistent conduct that a plaintiff must allege to satisfy the *Iqbal* standard in this context. *Ball-Bey v. Chandler*, 415 F. Supp. 3d 884, 895 (E.D. Mo. 2019). Nonetheless, the Court finds that the two instances of alleged "similar constitutional violations" identified in the amended complaint are not sufficient to support the existence of a continuing, widespread, persistent pattern. Further, the amended complaint is devoid of any indication that the two instances alleged bear any factual similarity to plaintiff's case. *See Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). Since plaintiff fails to allege facts to support the existence of a continuing, widespread, and persistent pattern of unconstitutional misconduct, his *Monell* custom element fails as well.

9

#### 4.  Deliberately Indifferent Failure to Train or Supervise

Plaintiff also asserts a failure to train or supervise as a basis for municipal liability. To state a failure to train or supervise claim, plaintiff must allege facts that show:

a)  The City of Sikeston's training practices were inadequate;

b)  The City of Sikeston was deliberately indifferent to the rights of others in adopting these training practices, and the failure to train was a result of deliberate and conscious choices it made; and,

c)  The training deficiencies caused constitutional deprivation.

*Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013).

To prove deliberate indifference to the rights of others, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *Jennings v. Wentzville R-IV School Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005).

Plaintiff's failure to train claim fails for the same reason as the custom claim: plaintiff has failed to allege facts establishing a pattern of constitutional violations. *See Ulrich*, 715 F.3d at 1061 (affirming district court's dismissal of Monell failure to train or supervise claim where the plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that cause the alleged deprivation of the plaintiff's rights). He also fails to provide any facts regarding deficiencies in the City of Sikeston's training program. Instead, he makes broad claims of a failure to adequately train or supervise. Such broad allegations are insufficient to state a claim. *See e.g., Jiang v. Porter*, 156 F. Supp. 3d 996, 1009 (E.D. Mo. 2015). Without factual allegations that

the City of Sikeston had notice that its training or supervision was inadequate prior to the events at issue, this *Monell* element fails as well.

Further, plaintiff fails to specify any particular deficiencies in the training of the officers. Without facts about what training the officers did or did not receive, plaintiff fails to sufficiently plead that a failure to train or supervise caused any alleged constitutional violation. *Ball-Bey*, 415 F. Supp. 3d at 900. Instead, his claim relies on an assumption that if a constitutional violation occurs, it must have been caused by a failure to train or supervise.

For all of the above reasons, plaintiff has failed to sufficiently allege municipal liability under 42 U.S.C. § 1983 against the City of Sikeston. Therefore, the City of Sikeston is entitled to dismissal, and the motion to dismiss the claim against it in Count I must be granted.

## C. Count II: Fourteenth Amendment Procedural Due Process Claim against Officer Minner and Sergeant Rowe

### 1. *Due Process Violation against Officer Minner*

The Fourteenth Amendment provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." *U.S. Const. Amend. 14, § 1.* To assert a procedural due process claim, the plaintiff must initially demonstrate that he was deprived of some "life, liberty, or property interest" arising under state law and, if successful, the plaintiff must then establish that he was deprived of that property interest without sufficient process. *Krentz v. Robertson*, 228 F.3d 897, 903 (8th Cir. 2000).

Here, plaintiff claims that Officer Minner made civil determinations beyond his police role and ignored established procedures for property disputes which clearly violated established constitutional rights to due process under the Fourteenth Amendment.  [Doc. 34 at ¶42].  Plaintiff specifically challenges Officer Minner's alleged violations of due process by refusing to acknowledge verified ownership evidence; deliberately fabricating false authority; denying all process through false classification; ignoring criminal allegations; creating false civil/criminal distinction; and, refusing to acknowledge legal rights.  [*Id*. at ¶¶ 44, 46].  In short, plaintiff argues that he should have been given possession of the truck and trailer had Officer Minner conducted his investigation in a way which did not violate plaintiff's Fourteenth Amendment constitutional rights to not be deprived of his property rights without due process of law.

The first question that must be resolved is whether plaintiff had a property interest in the truck and trailer at issue.  Plaintiff claims he had verified ownership evidence because the certificate of title is in his name.  However, in Missouri, a certificate of title to a motor vehicle is not conclusive proof of the ownership of such vehicle but is only *prima facie* evidence of ownership, capable of being rebutted by other evidence.  *Landshire Food Serv., Inc. v. Coghill*, 709 S.W.2d 509, 512 (Mo. App. E.D. 1986).  A certificate of title owner of a vehicle had a legal right to transfer possession of the vehicle to another party without delivering properly assigned certificates of ownership – such transaction was "an executory contract to be completed in the future."  *Strebler v. Hampton Metro Bank*, 686 S.W.2d 28 (Mo. App. E.D. 1984) *citing Allstate Ins. Co. v. Hartford Accident and Indemnity Co.*, 311 S.W.2d 41, 46 [2,3] (Mo. App. 1958).  Here,

Stewart claimed entitlement to the truck and trailer based upon an alleged agreement or contract with plaintiff.  Stewart provided Officer Minner with a copy of the alleged agreement or contract, proof that he had possession of the truck and trailer, and proof that he, at the time, had the unsigned certificate of title in his possession.  Officer Minner's knowledge of both plaintiff and Stewart's reasonable and actual claims of ownership to the truck and trailer put Officer Minner on notice that the dispute was a civil matter not involving criminal intent.  *See Peterson v. City of Plymouth*, 60 F.3d 469, 477 (8th Cir. 1995).  Officer Minner advised both parties of the same.

Assuming the plaintiff is the actual owner of the truck and trailer in question, the next question is to determine what process he was due.  Plaintiff claims that Officer Minner's determination that the disputed ownership interest was more properly resolved in civil court was a deliberate and reckless abuse of his authority that resulted in a taking of plaintiff's property.  Due process does require that plaintiff have an opportunity to challenge the taking of his property at a meaningful time and in a meaningful manner. *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976).  However, due process is satisfied if a meaningful post-deprivation remedy is available.  *Allen v City of Kinlock*, 763 F.2d 335, 336-37 (8th Cir. 1985).  In Missouri, a person claiming the right to possession of personal property wrongfully detained by another may bring an action in replevin.  *Id. citing* Mo. R. Civ. P. 99.01.  If the court or jury finds the plaintiff in such an action entitled to possession of the property, a judgment issues for the return of the property or the value of the property, and for damages assessed for the taking, detention or injury.  Mo. R. Civ. P. 99.12.  There is no reason to suppose that plaintiff could not have obtained adequate

13

relief for the taking of his truck and trailer in a replevin action. Accordingly, this Court must hold that plaintiff failed to establish any violation of his constitutional rights against Officer Minner.

### 2. *Supervisory Liability against Sergeant Rowe*

"[A] supervisor may…be liable under § 1983 if either his direct action or his 'failure to properly supervise and train the offending employee' caused the constitutional violation at issue. *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) *quoting Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001). "Even if a supervisor is not involved in day-to-day operations, his personal involvement may be found if he is involved in 'creating, applying, or interpreting a policy' that gives rise to unconstitutional conditions. *Id.* quoting *Bonner v. Outlaw*, 552 F.3d 673, 679 (8th Cir. 2009). When pursuing supervisor liability on a failure to supervise theory, the plaintiff must show that the supervisor (1) received notice of a pattern the subordinate committing unconstitutional acts, and (2) was deliberately indifferent to or authorized those acts. *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). Such liability only attaches if an individual officer committed a constitutional violation. *Rogers v. King*, 885 F.3d 1118, 1122 (8th Cir. 2018).

Here, plaintiff has not alleged that Officer Minner was inadequately trained to respond to the dispute between he and Stewart. Rather, he asserts that Sergeant Rowe participated in due process violations and ratified a subordinate's due process violations by approving false civil classification, supporting fabricated prosecutor involvement, and providing no hearing or process. [Doc. 34 at ¶51]. He further alleges that Sergeant Rowe exercised final decision-making authority and directed subordinate officers' actions.

14

These allegations go toward Sergeant Rowe's own actions rather than his supervisory role over Officer Minner. Further, for the reasons stated *supra*, Officer Minner did not commit a Fourteenth Amendment constitutional violation. As such, Sergeant Rowe cannot be liable under a supervisor liability theory.

For all of the above reasons, plaintiff has failed to sufficiently allege Fourteenth Amendment procedural due process claims against the Officer Minner and Sergeant Rowe. Therefore, the motion to dismiss the claim against Officer Minner and Sergeant Rowe in Count II must be granted.

### D. Count III: Fourth Amendment Unreasonable Seizure Claim against Officer Minner and Sergeant Rowe

#### 1. *Unreasonable Seizure against Officer Minner*

The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." *U.S. v. Jones*, 565 U.S. 400, 404 (2012). A vehicle is an "effect" as that term is used in the Amendment. *Id.* A seizure of property under the Fourth Amendment occurs when there is some meaningful interference with an individual's possessory interest in that property. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Meaningful interference includes the exercise of dominion and control over or destruction of the property. *U.S. v. Va Lerie*, 424 F.3d 694, 702 (8th Cir. 2005) *citing Jacobsen*, 466 U.S. 109. To establish a claim for seizure of property under the Fourth Amendment, a claimant must plausibly allege that a seizure occurred <u>and</u> that it was unreasonable. *Hawkins v. City of Farmington*, 189 F.3d 695, 702 (8th Cir. 1999).

15

"[A]n action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action." *United States v. Klump*, 536 F.3d 113, 118 (2d Cir. 2008) *quoting Brigham City v. Stuart*, 547 U.S. 398, 404 (2006).

The United States Supreme Court has consistently construed this protection as proscribing only governmental action. *Id.* at 113 *citing Walter v. United States*, 447 U.S. 649, 662 (1980). Thus, Fourth Amendment claims are inapplicable "to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." *Id.* Whether a private party should be deemed an agent or instrument of the government for Fourth Amendment purposes necessarily turns on the degree of the government's participation in the private party's activities, a question that can only be resolved in light of all the circumstances. *United States v. Wiest*, 596 F.3d 906, 910 (8th Cir. 2010) *quoting Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 614 (1989). In evaluating agency in the Fourth Amendment context, courts have focused on three relevant factors: (1) whether the government had knowledge of and acquiesced in the intrusive conduct; (2) whether the citizen intended to assist law enforcement or instead acted to further his own purposes, and (3) whether the citizen acted at the government's request. *Id.*

Here, the plaintiff argues that Officer Minner executed an unreasonable seizure by meaningfully interfering with possession, acting without legal justification, and knowingly fabricating authority. [Doc. 34 at ¶60]. However, Officer Minner never physically seized the alleged property at issue. Rather, plaintiff argues that Officer

16

Minner blocked plaintiff from recovering what he alleged to be his stolen property, and Officer Minner failed to intervene to prevent Roger Stewart from retaining the property. Since this case deals with a private party's actions and seizure, we must evaluate the three relevant factors to determine whether plaintiff's alleged seizure is one by a private individual or a government official.

The first factor – knowledge and acquiescence – cuts in favor of a finding of agency. Officer Minner knew of and acquiesced in Roger Stewart's seizure or possession of the property at issue by allowing Stewart to maintain possession when he determined the dispute to be civil in nature. The third factor – whether the government requested the challenged seizure – cuts against this conclusion of agency. Officer Minner did not ask or compel Stewart to seize or take possession of the property. Stewart's acts were voluntary and unsolicited by Officer Minner. Thus, we must turn to the remaining factor of whether Stewart intended to assist Officer Minner or instead acted to further his own purposes. Here, there is no evidence suggesting that Stewart was motivated primarily by a desire to help the police. To the contrary, the record indicates a compelling personal motive on Stewart's part to seize and possess the property:  to fulfill what he alleged to be a valid contractual obligation. Thus, although Officer Minner knew of and acquiesced in Stewart's seizure and possession of the truck and trailer, Stewart's seizure and possession was undertaken of his own accord and was not through or on behalf of a government official. Accordingly, this Court must hold that plaintiff failed to establish any violation of his constitutional rights against Officer Minner.

### 2. *Supervisor Liability against Sergeant Rowe*

Plaintiff has alleged supervisor liability against Sergeant Rowe relating to Officer Minner's alleged Fourth Amendment unreasonable seizure. *See supra*. Plaintiff alleges that Sergeant Rowe personally participated in the unreasonable seizure by verifying ownership and maintaining seizure, threatening force to continue seizure, and ratifying unlawful seizure. As set forth *supra*, these allegations go toward Sergeant Rowe's own actions rather than his supervisory role over Officer Minner. Further, for the reasons stated *supra*, Officer Minner did not commit a Fourth Amendment constitutional violation. As such, Sergeant Rowe cannot be liable under a supervisor liability theory.

For all of the above reasons, plaintiff has failed to sufficiently allege Fourth Amendment unreasonable seizure claims against the Officer Minner and Sergeant Rowe. Therefore, the motion to dismiss the claim against Officer Minner and Sergeant Rowe in Count III must be granted.

## E. Count IV: Fourteenth Amendment Equal Protection (class-of-one) Claim against Chief McMillen and Captain Broom

The threshold inquiry in a class-of-one equal protection claim is whether the complaining party is similarly situated to others who allegedly received preferential treatment. *Domina v. Van Pelt*, 235 F.3d 1091, 1099 (8th Cir. 2000). Absent such a threshold showing, no viable equal protection claim exists. *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994). "To be similarly situated for purposes of a class-of-one-equal-protection claim, the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in all material respects. *Robbins v.*

18

*Becker,* 794 F.3d 988, 996 (8th Cir. 2015) *citing Reget v. City of La Crosse,* 595 F.3d 691, 695 (7th Cir. 2010).  Further, plaintiff must "provide a specific and detailed account of the nature of the preferred treatment of the favored class," especially when the state actors exercise broad discretion to balance a number of legitimate considerations.  *Nolan v. Thompson*, 521 F.3d 983, 990 (8th Cir. 2008) *quoting Jennings v. City of Stillwater*, 383 F.3d 1199, 1214 (10th Cir. 2004).

Here, plaintiff alleges that he is similarly situated to Sikeston residents requesting police services, citizens filing property damage reports, individuals seeking body camera footage, and community members reporting crimes.  [Doc. 34 at ¶75].  He alleges that Captain Broom altered evidence selectively against plaintiff and denied standard police services to plaintiff.  [*Id.* at ¶72].  He also alleges that Chief McMillen established a discriminatory policy with a written directive specifically targeting plaintiff and issuing department-wide implementation orders to that effect.  [*Id.* at ¶73].

The facts as plaintiff has alleged fail to provide any supporting details identifying how the alleged comparators were treated more favorably under similar circumstances.  Further, plaintiff has failed to allege sufficient facts to establish that the persons alleged to have been treated more favorably are identical and directly comparable to the plaintiff in all material respects.  *See Robbins,* 794 F.3d at 996.  Merely "saying the magic words" in the amended complaint is not enough to provide this Court with specific and detailed accounts of the nature of the preferred treatment of the favored class.  *See Nolan*, 521 F.3d at 990.  Accordingly, plaintiff has failed to sufficiently allege a Fourteenth Amendment Equal Protection class-of-one claim against Chief McMillen and Captain

Broom.  Therefore, the motion to dismiss the claim against Chief McMillen and Captain Broom in Count IV must be granted.

**F.  Count V:  First Amendment Retaliation Claim against Chief McMillen**

To demonstrate retaliation under the First Amendment, a plaintiff "must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Spencer v. Jackson Cty., Mo.*, 738 F.3d 907, 911 (8th Cir. 2013).  The retaliatory conduct does not need to be a constitutional violation to be actionable.  *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001).  However, the "reason for the government official's action must have been to prevent the plaintiff from engaging in the protected activity."  *Saylor v. Nebraska*, 812 F.3d 637, 646 (8th Cir. 2016).

Plaintiff alleges in his amended complaint that he engaged in constitutionally protected conduct when he requested body camera footage, police reports and documentation, and department policies and procedures; filed formal complaints, spoke with department staff, and sought administrative remedies; and, reported misconduct, questioned official actions, and sought public information.  [Doc. 34 at ¶88].  He alleges that Chief McMillan took adverse actions on October 8, 2024, when he restricted communications between plaintiff and his office and denied certain services and requests from plaintiff.  [*Id.* at ¶89].

As to the first element in a First Amendment retaliation claim, there is no doubt that plaintiff engaged in various forms of constitutionally protected conduct.  *See e.g.,*

*City of Houston v. Hill*, 482 U.S. 451, 461 (1987) (constitutional protection extends to criticisms of the police, i.e., filing complaints).

As to the second element, plaintiff must (a) show that the government official took adverse action against him and (b) that the adverse action taken would chill a person of ordinary firmness from continuing in the activity.  *Spencer*, 738 F.3d at 911.  Plaintiff cannot meet his burden as to this second element.  First, plaintiff's amended complaint does not identify an adverse action taken against him.  While plaintiff alleges that Chief McMillan took adverse action by restricting his communications with officers and denying requests, the exhibits that plaintiff attaches to the amended complaint say otherwise.  While Chief McMillan may have restricted plaintiff's communications with officers – he did so by directing plaintiff to communicate only with him about the incident with Stewart.  This was not taken as an adverse action against plaintiff as much as it was to prevent confusion and duplication within the office.  Chief McMillan continued to communicate with the plaintiff, so plaintiff's line of communication was not severed as he would like this Court to think.  Further, Chief McMillan responded to all requests that were made by plaintiff and provided him with documents, videos, and numerous email correspondence to answer his questions.  [Docs. 34-20, 34-21, 34-26].

Assuming arguendo that plaintiff had alleged sufficient facts of an adverse action, his amended complaint fails to show how any of those actions would chill a person of ordinary firmness from continuing with the protected activity.  *Spencer*, 738 F.3d at 911.  The chilling effect of an adverse action must be determined on an objective basis.  *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003).  "The question is not whether the

21

plaintiff herself was deterred, though how plaintiff acted might be evidence of what a reasonable person would have done." *Id.* Here, plaintiff was certainly not deterred from continuing with the protected activity or conduct. Plaintiff never ceased sending communications or seeking information and documents from 2022 thru 2025. [Docs. 34-20, 34-21, 34-26]. Plaintiff fails to allege how any reasonable person would have been deterred either.

The third element requires a causal connection between plaintiff's protected activity and the allegedly retaliatory behavior. *Spencer*, 738 F.3d at 911. The Court, again, finds that the plaintiff has failed to plead sufficient facts to enable a trier of fact to find Chief McMillan executed any retaliatory action against the plaintiff – or sought to deter him from continuing with his constitutionally protected activities and conduct. Plaintiff's continued attempts at asserting threadbare recitals of the elements of a cause of action, supported only by conclusory statements, is insufficient to state a claim upon which relief may be granted. As such, plaintiff has failed to sufficiently allege a First Amendment Retaliation claim against Chief McMillen. Therefore, the motion to dismiss the claim against Chief McMillen in Count V must be granted.

## G. Count VI: Civil Conspiracy to Violate Constitutional Rights under 42 U.S.C. § 1983 Claims against Chief McMillen and Captain Broom

A conspiracy claim under 42 U.S.C. §1983 requires a plaintiff to establish:  (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) the overt act injured the plaintiff. *Bonenberger v. St. Louis*

*Metropolitan Police Dept.*, 810 F.3d 1103, 1109 (8th Cir. 2016).  Plaintiff's failure to establish deprivation of any constitutional rights is fatal to his claim that Chief McMillen and Captain Broom conspired to violate his constitutional rights.  *Robbins v. Becker*, 794 F.3d 988, 997 (8th Cir. 2015).  "Absent a constitutional violation, 'there is no actionable conspiracy claim.'"  *Slusarchuk v. Hoff*, 346 F.3d 1178, 1183 (8th Cir. 2003) *quoting Cook v. Tadros*, 312 F.3d 386, 388 (8th Cir. 2002).  Accordingly, the motion to dismiss the claim against Chief McMillen and Captain Broom in Count VI must be granted.

## H.  Qualified Immunity

As part of the defendants' motion to dismiss, they assert qualified immunity on behalf of Officer Minner, Sergeant Rowe, Chief McMillan and Captain Broom. "Qualified immunity shields public officials from liability for civil damages if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Watkins v. City of St. Louis, Missouri*, 102 F.4th 947, 951 (8th Cir. 2024).  "To overcome qualified immunity at the motion to dismiss stage, a plaintiff must plead facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."  *Id.*  "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987).

At the pleading stage, plaintiff was required to plead specific facts that would have allowed this Court to draw the reasonable inference that the defendants are liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.

As alleged in plaintiff's amended complaint, this Court has found that no constitutional violations have occurred at the hands of Officer Minner, Sergeant Rowe, Chief McMillan or Captain Broom. *See supra*. Without a constitutional violation having occurred, plaintiff cannot overcome the defendants' claims to qualified immunity. Therefore, the Court finds that Officer Minner, Sergeant Rowe, Chief McMillan and Captain Broom are entitled to qualified immunity from the allegations made in plaintiff's amended complaint; and, the claims against them must be dismissed.

## V.    CONCLUSION

Based upon the foregoing, this case will be dismissed in its entirety.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss [Doc. 37] is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter is **DISMISSED** without prejudice in its entirety and the Clerk of Court is **DIRECTED** to **CLOSE** the case and **TERMINATE** the pending motion for preliminary injunctive relief to compel complete body camera footage and maintain chain of custody [Doc. 35]. A separate order of dismissal will accompany this Memorandum and Order.

**IT IS FINALLY ORDERED** that an appeal from this Order would not be taken in good faith.

Dated this 5th day of September, 2025.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE

24